IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IN RE: BERJAC OF OREGON,                    Case No. 6:14-cv-01851-AA

        Debtors,                                OPINION AND ORDER

THOMAS A. HUNTSBERGER, Trustee

        Plaintiff,

    v.

UMPQUA HOLDINGS CORP.,
UMPQUA BANK,
PACIFIC CONTINENTAL CORP.,
PACIFIC CONTINENTAL BANK,
CENTURY BANK,
SUMMIT BANK, and
JONES & ROTH, P.C.

        Defendants.

_____

AIKEN, Chief Judge:

    Defendants Umpqua Holdings Corp. (UHC), Umpqua Bank
(collectively Umpqua), Pacific Continental Corp. (PCC), Pacific

1 - OPINION AND ORDER

Continental Bank (PCB), Century Bank[1], Summit Bank (collectively the banks), and Jones & Roth, P.C. (J & R), move to dismiss or make more definite and certain plaintiff's, Thomas Huntsberger, claims against them pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(6), and 12(e).   For the reasons set forth below, defendants' motions are granted in part and denied in part.

<u>BACKGROUND</u>

Plaintiff is the court appointed Chapter 7 trustee of debtor, Berjac of Oregon (debtor), which filed for bankruptcy on August 31, 2012. Pl.'s Am. Compl. ¶¶ 5-6.  Debtor was a general partnership that was wholly owned by its only two partners, Michael and Gary Holcomb.  <u>Id</u>. at ¶ 6.  Debtor was in the insurance premium financing business, whereby it collected money from investors that it purportedly used to advance insurance premiums to businesses that chose not to pay the full premiums upfront.  <u>Id</u>. at ¶¶ 6, 13.  Plaintiff alleges, however, that the money received from investors was used personally by the Holcombs, as well as by their family members and affiliates, and was also used to pay interest and return principal to earlier investors in furtherance of a Ponzi scheme that cost investors

---

[1] Plaintiff alleges that in 2012-13, PCC acquired Century Bank and PCB, as the successor in interest to Century Bank, is liable for all claims stated against Century Bank.  Pl.'s Am. Compl. ¶ 10.   As such, PCC, PBC, and Century Bank are hereinafter referred to collectively as Pacific Continental Defendants (PCD).

2 - OPINION AND ORDER

over $44 million when the scheme collapsed. Id. at ¶ 15; Pl.'s Opp'n to PCD's Mot. to Dismiss 2.

Plaintiff alleges that a key part of the Holcombs' alleged Ponzi scheme, were lines of credit that the Holcombs established at the banks, which "allowed investors to withdraw money from their accounts at any time . . . when current funds were insufficient to pay investor calls." Pl.'s Am. Compl. ¶ 16. Specifically, plaintiff alleges that debtor established lines of credit with Umpqua Bank and PCB and that Michael and Gary Holcomb, personally, and through a family owned business, the Holcomb Family Limited Partnership (HFLP), established additional lines of credit at Century Bank and Summit Bank. Id.

Plaintiff also argues that J & R, the firm that provided accounting services for debtor, was aware that "the banks were making lending decisions based, at least in part, on the financial statements issued by [J & R] . . . [and] that in the absence of accountant-prepared financial statements, debtor's ability to maintain or obtain new credit relationships with the banks would be impaired." Id. at ¶ 21. Moreover, plaintiff argues that the alleged Ponzi scheme, in which "investors could add to and withdraw their money at any time, on demand – was accomplished with, and required the assistance of, the banks and

the accountants [and] [w]ithout their assistance, the scheme would have collapsed." Id. at ¶ 19.

STANDARDS

I.   Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation and quotes omitted). "While a complaint attacked by a motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citation and quotes omitted) (see also Papasan v. Allain, 478 U.S. 265, 286 (1986) on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual

4 – OPINION AND ORDER

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully. Id. at 678-79 (see also Twombly, 550 U.S. at 555, "Factual allegations must be enough to raise a right to relief above the speculative level."). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (citation and quotes omitted).

Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). "A well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

II. Pleading Standard for Claims of Fraud

Where a complaint includes allegations of fraud, Rule 9(b) requires that the allegations be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charges so that they can defend against

5 - OPINION AND ORDER

the charge and not just deny that they have not done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). The complaint "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1108 (9th Cir. 2003). Moreover, Rule 9(b) states that although "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," the plaintiff must "set forth facts from which an inference of scienter could be drawn." Cooper v. Pickett, 137 F.3d 616, 628 (9th Cir. 1997) (internal quotations omitted).

However, where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (citing Vess, 317 F.3d at 1105). When a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2). Id. "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word fraud is not used)." Vess, 317 F.3d at 1105.

### III. Pleading Standard in Cases with Multiple Defendants

"Where several defendants are sued in connection with an alleged fraudulent scheme, the plaintiff must identify the role of each defendant in the scheme." Alcantar v. MML Investors

6 - OPINION AND ORDER

Services, Inc., 2008 WL 257089 at 5 (D. Or. 2008) (citing Swartz
v. KPMG, LLP, 476 F.3d 756, 765 (9th Cir. 2007)). "[C]onclusory
allegations that defendants were acting in concert, acting as
agents, or were active participants in the conspiracy, without
any stated factual basis, are insufficient as a matter of law."
Id. (internal quotationss omitted). "Rule 9(b) does not allow a
complaint to merely lump multiple defendants together, but
require[s] plaintiffs to differentiate their allegations when
suing more than one defendant . . . and inform each defendant
separately of the allegations surrounding his alleged
participation in the fraud." Swartz, 476 F.3d at 764-65.
Moreover, "in the context of a fraud suit involving multiple
defendants, a plaintiff must, at a minimum, identify the role of
each defendant in the alleged fraudulent scheme." Id.

## IV.   Motion to Make More Definite and Certain

Under Rule 12(e), "[a] party may move for a more definite
statement of a pleading to which a responsive pleading is
allowed but which is so vague or ambiguous that the party cannot
reasonably prepare a response." Fed. R. Civ. P. 12(e). A
plaintiff should be granted leave to amend if the complaint can
possibly be cured by additional factual allegations. Doe v.
U.S.A., 58 F.3d 494, 497 (9th Cir. 1995). However, "[d]ismissal
without leave to amend is proper if it is clear that the

7 - OPINION AND ORDER

complaint could not be saved by amendment." <u>Kendall v. Visa</u> <u>U.S.A., Inc.</u>, 518 F.3d 1042, 1051 (9th Cir. 2008).

<u>DISCUSSION</u>

Plaintiff argues that "the gravemen of the entire action is the existence [of] a very old Ponzi scheme," which "was accomplished with, and required the assistance of, the banks and accountants [and] [w]ithout their assistance, the scheme would have collapsed." Pl.'s Am. Compl. ¶ 19; Pl.'s Opp'n to J & R's Mot. to Dismiss 13. Specifically, plaintiff argues that that the banks and J & R "took actions that knowingly and substantially facilitated the Ponzi scheme" and that "allegations of a Ponzi scheme are prima facie for fraud." Pl.'s Opp'n to PCD's Mot. to Dismiss 2; Pl.'s Opp'n to Umpqua's Mot. to Dismiss 10. Consequently, plaintiff makes eleven claims for relief against the banks and J & R pursuant to sections 541, 544, and 547-551 of the Bankruptcy Code, as well as Oregon Revised Statutes 95.200-95.310 (Oregon's Uniform Fraudulent Transfers Act (UFTA)). Pl.'s Am. Compl. 13-29.

As an initial matter, because a Ponzi scheme, and thus fraud, is the "gravemen of the entire action," the heightened pleading standard of Rule 9(b) applies to all of plaintiff's claims against the banks and J & R. <u>Vess</u>, 317 F.3d at 1105.

///

8 – OPINION AND ORDER

I.   Plaintiff's Claims against the Banks

Plaintiff brings eight claims against the banks.   Id. at
13-22.   Each bank moves individually to have each claim against
it dismissed, or in the alternative, made more definite and
certain.   Moreover, UHC and PCC make blanket arguments to have
all claims against them dismissed.   The Court first addresses
defendants UHC's and PCC's blanket motions to dismiss all
claims.

A.  Inclusion of UHC and PCC

Plaintiff argues that UHC and PCC are named in the suit
because they own or control nearly all the interest in
subsidiary banks and, therefore, "control[] the actions of the
bank[s]."   Pl.'s Opp'n to Umpqua's Mot. to Dismiss 18.
Plaintiff also alleges that UHC and PCC had "apparent control"
of the subsidiary banks because PCC and UHC both "widely refer
in regulatory submissions and marketing materials to the banking
businesses that each conduct through bank subsidiaries," their
"headquarters are physically located in proximity to active bank
locations," they "share board members and officers" with their
subsidiaries, and they "report their financial activities on a
consolidated basis."   Pl.'s Opp'n to PCD's Mot. to Dismiss 4.
Plaintiff argues that as a result of this alleged control, the

9 - OPINION AND ORDER

potential liability of the holding companies and the subsidiaries is "co-extensive under multiple theories." Id.

Plaintiff's first theory is that it can pierce the corporate veil and hold the parent companies liable because the parent companies had knowledge of the alleged Ponzi scheme and "to the extent [they] received or benefitted from the proceeds, [they are] culpable with the bank[s]." Id. at 19. Plaintiff's second theory is that it can recover voidable transfers against UHC and PCC as transferees or mediate transferees under both state and federal law. Id.

In support of plaintiff's first theory that PCC and UHC are liable due to their alleged knowledge of the alleged Ponzi scheme, plaintiff cites an "Umpqua email" that was sent after debtor "retired the Umpqua Bank line of credit." Pl.'s Am. Compl. ¶ 23. The email stated that "with all the Ponzi schemes coming to light these days, we are so lucky they didn't have a panic and run on the money from their investors." Id. Plaintiff also alleges that Michael Holcomb was a PCB board member, that Michael Holcomb had knowledge of the Ponzi scheme, and that PCC and PCB share board members. Id. at ¶¶ 19, 24; Pl's Opp'n to PCD's Mot. to Dismiss 4. Finally, plaintiff alleges that the banks had knowledge that debtor owed $44

million to investors, but had less than $1.3 million in receivables. Pl.'s Opp'n to Umpqua's Mot. to Dismiss 10.

PCC and UHC argue that all claims against them should be dismissed because they did not provide banking services to debtor, they are separate legal entities from PCB and Umpqua Bank, and plaintiff did not allege facts sufficient to pierce the corporate veil. PCD's Mem. in Supp. of Mot. to Dismiss 5; UHC's Mot. to Dismiss 4. Moreover, PCD argues that PCC "is not [PCB]" and "because the Amended Complaint asserts no claims against PCC, PCC should be dismissed." PCD's Reply in Supp. of Mot. to Dismiss 5.

"[I]n Oregon, piercing the corporate veil 'is an extraordinary remedy which exists as a last resort, where there is no other adequate and available remedy to repair the plaintiff's injury.'" Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1228 (9th Cir. 2005) (quoting Amfac Foods v. Int'l Systems, 294 Or. 94, 103 (1982)). A plaintiff seeking to pierce the corporate veil "[must] prove that another entity actually controlled (or was under common control with) the corporation, that the other entity used its control over the corporation to engage in improper conduct, and that, as a result of the improper conduct, the plaintiff was

11 - OPINION AND ORDER

harmed." State ex. Rel. Neidig v. Superior Nat. Ins. Co., 343 Or. 434, 454-55 (2007).

Further, "the 'control,' as discussed above, is not simply potential control or control of general operations, but actual control over the specific conduct that led to the plaintiff's harm; therefore, even when affiliated corporations share directors, officers, and facilities, the control required to pierce the corporate veil is not necessarily present." Amfac Foods, 294 Or. at 108-09. Moreover, "each part of the test — control, wrongful conduct, and causation — can present close legal and factual questions that must be considered in reaching the ultimate equitable determination as to whether the corporate veil can be pierced." Id.

Here, the Court rejects PCC's assertion that no claims were brought against it. In paragraph ten of the Amended Complaint, plaintiff defines "Pacific Continental Bank" as the aggregate of PCB and PCC. Similarly, in paragraph eight of the Amended Complaint, plaintiff defines UHC as "Umpqua Bank."[2] Accordingly, although PCD is correct that PCC is a separate legal entity, and PCC is not PCB, because plaintiff defined the aggregate of the

[2] In paragraph eight, plaintiff abbreviates only UHC as "Umpqua Bank" and does not abbreviate the name of Umpqua Bank itself. Consequently, subsequent to paragraph eight of the Amended Complaint, each reference made to "Umpqua Bank" is interpreted as referring to both Umpqua Bank, the unabbreviated subsidiary bank, as well as UHC, the abbreviated parent company.

12 – OPINION AND ORDER

PCC and PCB as "Pacific Continental Bank," and plaintiff makes multiple allegations throughout the Amended complaint against "Pacific Continental Bank," PCD's argument that no claims were brought against PCC fails.

However, as stated above, Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. Swartz, 476 F.3d at 764-65. Consequently, because plaintiff's claims against UHC and PCC do not comport with Rule 9(b), and because a comprehensive review of the entire relationship between PCC, UHC, and their subsidiary banks is required before a determination can be made regarding whether the corporate veil can be pierced, which presents close legal and factual questions that cannot be answered when the allegations against PCC and UHC are unclear, defendants' blanket motions to dismiss all claims against PCC and UHC are granted. However, because it is not clear that the complaint could not be saved by amendment, pursuant to Rule 12(e), plaintiff is granted leave to amend the complaint as directed above. Doe, 58 F.3d at 497; Kendall, 518 F.3d at 1051.

///

13 - OPINION AND ORDER

B.  <u>Plaintiff's First and Second Claims</u>

Plaintiff's first claim seeks to avoid and recover "fraudulent" transfers made within ten years of the petition date pursuant to Bankruptcy Code sections 544, 550(a), 551, and Oregon's UFTA.  Pl.'s Am. Compl. ¶¶ 40, 43.  Additionally, plaintiff seeks punitive damages from each bank defendant because it alleges the "banks' conduct was intentional, willful, and fraudulent in nature." <u>Id</u>. at ¶ 44.

Plaintiff's second claim seeks to avoid and recover "fraudulent" transfers made within two years of the petition date pursuant to Bankruptcy Code sections 101(54), 548, 550, and 551.  Specifically, plaintiff's second claim alleges that Michael and Gary Holcomb, "acting themselves and through others ostensibly on behalf of debtor, made fraudulent transfers with the actual intent to hinder, delay, or defraud creditors of debtor – as established by the existence of the Ponzi scheme." <u>Id</u>. at ¶ 47.  Plaintiff argues that in the alternative, the allegedly fraudulent transfers "were not made on account of a valid antecedent debt," were made without debtor receiving "reasonably equivalent value in exchange for those transfers," and that debtor was engaged in a business transaction with assets that were "unreasonably small in relation to the business

transaction" or intended to incur debts beyond its ability to repay them as they became due. Id. at ¶ 48.

Defendants argue that plaintiff's first and second claims for relief should be dismissed, or in the alternative, made more definite and certain: (1) because plaintiff's first claim is time barred; (2) to the extent plaintiff seeks to avoid any transfer of a perfected security interest or other valid lien, because such transfers are not subject to avoidance under UFTA; (3) because plaintiff failed to plead the asserted claim with the particularity required by Rules 9(b) and 8(a) and in accordance with Rule 12(b)(6); (4) to the extent plaintiff seeks to avoid any transfer, other than a transfer of property of the debtor, because such transfers are not subject to avoidance under UFTA; (5) to the extent plaintiff seeks to recover more than the net amount allegedly transferred to the bank defendants because such amounts are not recoverable under 11 U.S.C. §550(a); (6) because the claims fail to name a predicate creditor and allege that such creditor could avoid the alleged transfers, thereby making plaintiff's allegations insufficient under 11 U.S.C. §544(b); and (7) because plaintiff failed to segregate claims and allegations between defendants as Rule 10(b) requires.   PCD's Mot. to Dismiss 2-3; Umpqua's Mot. to Dismiss 5-12; Summit's Mot. to Dismiss 6-8, 11.

15 - OPINION AND ORDER

### 1. Timeliness of Plaintiff's First Claim

Plaintiff's first claim asserts that pursuant to section 544(b) of the Bankruptcy Code, it "can recover fraudulent conveyances that have not yet expired under state law" [and] "in Oregon, the statute of limitations is the later of four years from the date of transfer or one year after the claim could reasonably have been discovered." Pl.'s Opp'n to Umpqua's Mot. to Dismiss 20. Plaintiff alleges that discovery of the fraudulent transfers "occurred with the filing of [debtor's] bankruptcy petition" on August 31, 2012 and that all claims that existed at that time "were effectively tolled for at least two years under Bankruptcy Code section 108(a)." Pl.'s Opp'n to Umpqua's Mot. to Dismiss 19-20; Pl.'s Am. Compl. ¶¶ 22, 23.

Plaintiff alleges that Umpqua's relationship with debtor ended in "mid-2009" and that "starting in 2008, Century Bank and PCB began providing lines of credit . . . and replaced the role of Umpqua Bank." Pl.'s Am. Compl. ¶¶ 23-24. Plaintiff makes no allegations of when debtor's relationship with PCD and Summit Bank ended and, instead, alleges only that "during various times material to this action, each of the defendant banks held multiple deposit accounts for debtor" and "from time to time, each of defendant banks" also made loans to the Holcombs and other Berjac businesses. Id. at ¶ 26.

16 - OPINION AND ORDER

Defendants argue that "the time period prescribed by ORS 95.280 is not tolled for avoidance actions under section 544(b)" because section 108 applies only to causes of action which the debtor owned and could have brought at the petition date.    PCD's Mot. to Dismiss 7 (citing Roost v. Kern, 2006 WL 4528530 at *2 (Bankr. D. Or. 2006) concluding that the period prescribed by Oregon Revised Statute 95.280 is not tolled for avoidance actions under section 544(b) because section 108(a) "applies only to causes of action which the **debtor** owned and could have brought at the petition date.") (Emphasis in original)).

Bankruptcy Code section 544(b) states that "the trustee may avoid any transfer . . . that is voidable under applicable law by a **creditor** holding an unsecured claim."    11 U.S.C. §§ 544, 544(b) (emphasis supplied) (see also In re JTS Corp., 617 F.3d 1102, 1111 (9th Cir. 2010) "Section 544 enables a bankruptcy trustee to avoid any transfer of property that an unsecured creditor with an allowable claim could have avoided under applicable state law.") (citations omitted).    Where a state law statute of limitations bars a creditor's claim, the trustee cannot pursue a section 544(b) avoidance claim.    In re Acequia, Inc., 34 F.3d 800, 807 (9th Cir. 1994).

Under Oregon law, a fraudulent transfer claim brought under UFTA is "extinguished" unless the action is brought:

17 – OPINION AND ORDER

> (1) under ORS 95.230(1)(a) within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
> (2) Under ORS 95.230(1)(b) or 95.240(1), within four years after the transfer was made or the obligation was incurred; or
> (3) Under ORS 95.240(2), within one year after the transfer was made or the obligation was incurred.

Or. Rev. Stat. 95.280.

Bankruptcy Code section 108 tolls the statute of limitations for debtors bringing certain nonbankruptcy law claims. Specifically, section 108 states that:

> if applicable nonbankruptcy law . . . fixes a period within which the **debtor** may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of - (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

11 U.S.C.A. § 108(a) (emphasis added).

Here, the Court finds unpersuasive plaintiff's argument that section 108 tolls the statute of limitations for claims brought pursuant to section 544(b). In addition to the persuasive analysis in Roost v. Kern cited by PCD, a plain reading of the pertinent statutes reveals that a trustee bringing a section 544 claim may avoid only transfers that are voidable by **creditors**, while section 108 tolls the statute of limitations for certain nonbankruptcy law claims brought by

18 - OPINION AND ORDER

**debtors**.    Accordingly,  this  Court  finds  that  plaintiff's argument that all its claims were tolled for at least two years is  without  merit  and  that  section  108  applies  only  to  those causes of action which the **debtor** owned or could have brought.

Consequently,  because  plaintiff  claims  to  have  discovered the  allegedly  fraudulent  transfers  upon  the  filing  of  debtor's bankruptcy petition on August 31, 2012, nearly two years before filing  the  immediate  action  on  August  28,  2014,  pursuant  to  ORS 95.280 (3), all claims brought against the banks pursuant to ORS 95.240 are extinguished because they were brought more than one year after the alleged transfers were made.

Further,  because  plaintiff  alleges  that  Umpqua's relationship with debtor ended in mid-2009, and plaintiff did not file the immediate action until nearly five years later on August  28,  2014,  plaintiff's  first  claim  for  relief  against Umpqua is dismissed because it was not brought within the four year  discovery  period  prescribed  by  ORS  95.230.    Finally,  as stated above, plaintiff merely alleges that from time to time, each of the defendant banks made loans to the Holcombs and other Berjac  businesses.    Consequently,  it  is  unclear  whether  any  of PCD  and  Summit  Bank's  alleged  transfers  were  made  within  the time period prescribed by ORS 95.280.    The Court addresses this ambiguity below.

19 - OPINION AND ORDER

2.  Adequacy of Pleading

    a.  Plaintiff's First Claim

As stated above, plaintiff's first claim seeks to avoid "fraudulent" transfers from the banks pursuant to section 544 and Oregon's UFTA and to recover those transfers pursuant to section 550(a).

Under Oregon law, "before a creditor is entitled to relief under UFTA, there must have been a transfer by the debtor." Kellstrom Bros. Painting v. Carriage Works, Inc., 117 Or. App. 276, 279 (1992). "ORS 95.200(12) provides that a 'transfer' means 'disposing of . . . an asset . . . .' [and] an 'asset' does not include a debtor's property 'to the extent that it is encumbered by a valid lien.'" Id. (quoting Or. Rev. Stat. 95.200(2)(a)). "A lien includes a 'security interest created by agreement.'" Id. (citing Or. Rev. Stat. 95.200(8)). Thus, assets disposed of by debtor, which were encumbered by a valid security interest, are not subject to relief under UFTA. Id.

Pursuant to Bankruptcy Code section 550(a), to the extent that a transfer is avoided under sections 544 or 548, "a trustee may recover a fraudulent transfer from 'the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any immediate or mediate transferee of such initial transferee.'" In Re Viola, 469 B.R. 1, 5 (2012) (quoting U.S.C.

20 - OPINION AND ORDER

§ 550(a)).  Although the term "transferee" is not defined in the Bankruptcy Code, the Ninth Circuit has adopted the "dominion test," which states that "a 'transferee' is one who has legal title to the funds and the ability to use them as the recipient sees fit."  In Re Viola, 583 Fed.Appx 669, 670 (Mem.) (9th Cir. 2014) (quoting In re Incomnet, Inc., 463 F.3d 1064, 1071 (9th Cir. 2006)) (see also In Re Viola, 469 B.R. 5-7, as affirmed by In Re Viola, 583 Fed.Appx 670, which held that where a trustee sought to avoid and recover allegedly fraudulent transfers from a bank in the wake of a Ponzi scheme under sections 544 and 548, the bank defendants were not transferees under section 550, because "the trustee failed to allege that the bank defendants had the requisite dominion over the account funds the trustee sought to recover" as the Ninth Circuit's dominion test requires, and instead, the trustee "alleged that the debtor exercised dominion over the accounts because the debtor fraudulently misappropriated his investors' funds . . .").

Here, the Amended Complaint lacks vital details relating to the allegedly fraudulent transfers that give rise plaintiff's first claim for relief.  Specifically, as stated above, the Amended Complaint fails to make clear when the alleged transfers took place.  Thus, it is unclear whether plaintiff's first claim was brought within the time period prescribed by ORS 95.280.

21 — OPINION AND ORDER

Moreover, the Amended Complaint fails to allege with clarity whether the transfers consisted of assets disposed of by debtor that were encumbered by a valid security interest,[3] or whether the transfers were to and from checking or deposit accounts, and if so, whether the banks had control over the funds in debtor's accounts as the dominion test requires. These distinctions are critical because plaintiff's first claim, insofar as it seeks to avoid and recover assets disposed of by debtor that were encumbered by a valid security interest, fails because those transfers are not recoverable under UFTA. Kellstrom Bros. Painting, 117 Or. App. at 279. Further, insofar as plaintiff seeks to avoid and recover transfers that were made to checking or deposit accounts, only transfers that resulted in the banks having legal title to the funds and the ability to use them as they see fit are voidable and recoverable under UFTA. In re Viola, 583 Fed.Appx at 670.

By failing to allege with clarity the timing and nature of the allegedly fraudulent transfers, plaintiff has failed to give defendants sufficient information so that they can defend against the charge and not just deny that they have done

---

[3] Plaintiff argues that the banks' security interests were invalid due to the banks' knowledge of the alleged Ponzi scheme. Pl.'s Opp'n to PCD's Mot. to Dismiss. However, plaintiff cites no binding authority for this argument. Consequently, this Court finds plaintiff's argument unpersuasive.

22 - OPINION AND ORDER

anything wrong.  <u>Semegen</u>, 780 F.2d at 731; <u>Vess</u>, 317 F.3d at 1108.  Consequently, plaintiff's first claim fails to comport with the pleading requirements of Rule 9(b) and is, therefore, dismissed.  However, because plaintiff's first claim could possibly be cured by additional factual allegations, plaintiff is granted leave to amend its first claim.  <u>Doe</u>, 58 F.3d at 497.

    b.  <u>Plaintiff's Second Claim</u>

    "Bankruptcy Code section 548 allows a trustee to avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor if the debtor made such transfer or incurred such obligation with actual intent to hinder, delay or defraud any creditor" within two years prior to the bankruptcy filing.  <u>In re First Alliance Mortg. Co.</u>, 471 F.3d 977, 1008 (9th Cir. 2006) (<u>citing</u> 11 U.S.C. § 548(a)(1)).

    The Ninth Circuit has held, however, that "[r]epayments of fully secured obligations—where a transfer results in a dollar for dollar reduction in the debtor's liability—do not hinder, delay, or defraud creditors because the transfers do not put assets otherwise available in a bankruptcy distribution out of [creditors] reach."  <u>Id</u>.  Thus, payments made to a bank on a secured line of credit are "simply not fraudulent transfers within the meaning of [Bankruptcy Code section 548]."  <u>Id</u>.

///

23 - OPINION AND ORDER

Here, plaintiff's second claim fails to comply with Rule 9(b) for the same reasons already stated above. Specifically, the distinction of whether the allegedly fraudulent transfers were made on secure lines of credit is critical to plaintiff's second claim because such payments are not transfers within the meaning of section 548. In re First Alliance Mortg. Co., 471 F.3d at 1008.

Plaintiff's second claim also fails, insofar as it seeks to avoid and recover allegedly fraudulent transfers into checking or deposit accounts because plaintiff failed to allege facts sufficient to demonstrate that the bank defendants had dominion over the funds in debtor's accounts. Rather, to the consternation of the duped investors, the Amended Complaint alleges that the Holcombs had complete dominion over the funds through themselves, their family members, and their affiliate's personal use of the funds, as well as through the Holcombs' use of the funds to pay interest and return principal to earlier investors in furtherance of the alleged Ponzi scheme. Consequently, plaintiff's failure to allege that the bank exercised dominion over the funds in debtor's accounts is dispositive of the issue of liability for allegedly fraudulent transfers into checking or deposit accounts under the Ninth Circuit dominion test and Bankruptcy Code section 550(a).

24 - OPINION AND ORDER

Accordingly, plaintiff's second complaint is dismissed for failure to comply with Rule 9(b). However, because plaintiff's second claim could possibly be cured by additional factual allegations, plaintiff is granted leave to amend its second claim. Doe, 58 F.3d at 497.

C. Plaintiff's Third Claim

Plaintiff's third claim asserts that the banks "aided and abetted, acted in concert with, and/or conspired with the Holcombs and others causing debtor to incur indebtedness to new investors that it had no ability to pay." Pl.'s Am. Compl. ¶ 54. Moreover, plaintiff argues that without the assistance of the banks and accountants, "the scheme would have collapsed." Id. at ¶¶ 19, 50. Plaintiff alleges that the banks "owed an independent duty to comply with all banking statutes, rules, and regulations, which [they] breached by extending loans to [debtor] with knowledge that said loans did not meet lawful standards." Id. at ¶ 52. Plaintiff also alleges that the banks "provided the lines of credit knowing that the debtor did not have the ability to make its investor commitments, . . . that the bank funds would be used to cover investor demands," and that the banks expected to "be repaid from funds later received from other investors." Id. at ¶ 53. Consequently, plaintiff alleges that by providing lines of credit that were an

25 - OPINION AND ORDER

"essential component to the continuation of the Ponzi scheme," the banks substantially assisted the Holcombs in breaching the fiduciary duties that they owed to debtor and also "breached their own independent regulatory duties." Id. at ¶¶ 51-53.

Defendants argue that plaintiff's third claim should be dismissed, or in the alternative, made more definite and certain because: (1) plaintiff is not the real party in interest; (2) plaintiff failed to plead the asserted claim with the particularity required by Rules 9(b) and 8(a) and in accordance with Rule 12(b)(6); (3) plaintiff failed to segregate claims and allegations between defendants as Rule 10(b) requires; (4) it is barred by the doctrine of in pari delicto; and (5) it is barred by the statute of limitations. Umpqua's Mot. to Dismiss 12-18; PCD's Mot. to Dismiss 3; Summit's Mot. to Dismiss 6-8.

1. Plaintiff's Standing as the Real Party in Interest

A bankruptcy trustee is the representative of the bankrupt estate and has the capacity to sue and be sued. See 11 U.S.C. § 323. Among the trustee's duties is the obligation to "collect and reduce to money the property of the estate." Id. § 704(1). "The 'property of the estate' includes 'all legal or equitable interests of the debtor in property as of the commencement of the case,' id. § 541(a)(1), including the debtor's 'causes of action.'" Smith v. Arthur Andersen, LLP, 421 F.3d 989, 1002

26 - OPINION AND ORDER

(9th Cir. 2005) (quoting United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 9 (1983)). "Thus, under the Bankruptcy Code, the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." Smith, 421 F.3d at 1002.

The Ninth Circuit has held that "prolonging an insolvent corporation's life through bad debt may dissipate corporate assets and thereby harm the value of corporate property." Id. at 1004. Thus, a "complaint states a cognizable harm to [a debtor] when it alleges that the defendants prolonged the firm's existence, causing it to expend corporate assets that would not have been spent if the corporation had been dissolved in a timely manner, rather than kept afloat with spurious debt." Id. (internal quotations omitted). Further, although "state law often permits creditors to pursue derivative claims on an insolvent corporation's behalf when the corporation itself has been injured by breaches of fiduciary duty[,] [b]ecause such claims involve injury to the debtor, a bankruptcy trustee [also] has standing to pursue them." Id. at 1006.

Here, plaintiff argues that by aiding and abetting, acting in concert with, and/or conspiring with the Holcombs and others, the bank defendants caused debtor to incur indebtedness to new

27 - OPINION AND ORDER

investors that it had no ability to pay.  Consequently, because
the Ninth Circuit recognizes that prolonging a debtor's life
through bad debt constitutes a cognizable harm to debtor, and
plaintiff alleges that the bank defendants caused debtor to
incur indebtedness to new investors that it could not pay,
thereby, prolonging debtor's life through bad debt, this Court
finds that plaintiff has standing to bring its third claim.

    2.  <u>Adequacy of Pleading</u>

  "Conspiracy to commit or aiding and assisting in the
commission of a tort are two of several ways in which a person
may become jointly liable for another's tortious conduct."
<u>Granewich v. Harding</u>, 329 Or. 47, 53 (1999).  Further, "neither
'conspiracy' nor 'aid and assist' is a separate theory of
recovery."  <u>Id</u>.  Oregon courts recognize section 876 of the
Restatement (Second) of Torts (1979) as reflecting the common
law where aiding and abetting breach of fiduciary duty is
alleged.  <u>Id</u>. at 56-57.  Section 876 provides:

> For harm resulting to a third person from the tortious
> conduct of another, one is subject to liability if he:
> (a) does a tortious act in concert with the other or
> pursuant to a common design with him;
> (b) knows that the other's conduct constitutes a
> breach of duty and gives substantial assistance or
> encouragement to the other so to conduct himself; or
> (c) gives substantial assistance to the other in
> accomplishing a tortious result and his own conduct,
> separately considered, constitutes a breach of duty to
> the third person.

28 - OPINION AND ORDER

Id. at 53-54.  In sum, "under Granewich and the Restatement, a person who acts 'in concert with' or 'gives substantial assistance or encouragement' to a fiduciary who breaches a duty to a third party may be liable for the resulting harm." Reynolds v. Schrock, 431 Or. 338, 346 (2006).

To state a claim under section 876 subpart (a), "to the extent that tort liability may be imposed on one who acts 'in concert' with a tortfeasor, the person acting in concert must be connected to the tortious conduct that gives liability." Mason v. Mt. St. Joseph, Inc., 226 Or. App. 392, 405 (2009) (citing Granewich, 329 Or. at 54).  "Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result," however "the agreement need not be expressed in words and may be implied and understood to exist from the conduct itself.  Restatement (Second) of Torts § 876, Comment a.  Put succinctly, "one is not liable for the acts of another if each is acting independently."  Granewich, 329 Or. at 54.

Here, plaintiff's third claim alleges that the banks breached their own regulatory duties by failing to comply with all banking statutes, rules, and regulations by extending loans to debtor with knowledge that said loans did not meet lawful

standards.    Plaintiff,    however,    fails    to    indicate    which fiduciary duty the banks breached, as well as which statutes, rules,  and  regulations  the  banks  failed  to  comply  with. Similarly,   plaintiff   argues   that   the   banks   substantially assisted  the  Holcombs  in  breaching  the  fiduciary  duties  that they  owed  to  debtor,  but,  again,  fails  to  allege  with specificity what those fiduciary duties are.

Consequently,  because  plaintiff  failed  to  indicate  which regulatory   duties,   statutes,   rules,   and   regulations   were breached  by  the  banks  and  the  Holcombs,  the  Court  cannot determine whether those unspecified duties, statutes, rules, and regulations  were  breached  by  the  banks  or  whether  the  banks supplied substantial assistance to the Holcombs in the breach of their  unspecified  duties.  Accordingly,  plaintiff's  third  claim is dismissed for failure to state a claim and the Court need not address  defendants'  additional  arguments.  However,  pursuant  to Rule 12(e), plaintiff shall be granted leave to amend its third complaint  to  comport  with  the  pleading  requirements  of  Rule 9(b).  Doe, 58 F.3d at 497; Kendall, 518 F.3d at 1051.

D.  Plaintiff's Fourth Claim

Plaintiff's  fourth  claim  is  for  unjust  enrichment  and restitution  and  asserts  that  "the  payment  by  debtor  of  the fraudulent transfers was made at a time when it was insolvent,

30 - OPINION AND ORDER

undercapitalized, or in the zone of insolvency [and] under such circumstances, retention of fraudulent transfers would constitute unjust enrichment." Pl.'s Am. Compl. ¶ 57. Consequently, plaintiff seeks "restitution of the full amount of said transfers, as to Umpqua Bank, Century Bank, PCB, and Summit Bank, plus interest." Id. Specifically, plaintiff argues that "the banks knowingly participated in a Ponzi scheme by offering loan arrangements that made the scheme possible" and "benefit[ted] from that loan business." Pl.'s Opp'n to Umpqua's Mot. to Dismiss 16.

Defendants argue that plaintiff's fourth claim for relief should be dismissed, or in the alternative, made more definite and certain because: (1) plaintiff lacks standing; (2) plaintiff failed to allege sufficient facts to state a claim for relief and failed to plead the claim with the particularity required by Rule 9(b); (3) plaintiff failed to segregate claims and allegations between defendants as Rule 10(b) requires; (4) it is barred by the doctrine of *in pari delicto*; and (5) the claim is duplicative of plaintiff's other claims for which plaintiff already has an available statutory remedy. Summit's Mot. to Dismiss 6-7, 11-14; Umpqua's Mot. to Dismiss 12-15, 18-19; PCD's Mot. to Dismiss 3.

///

31 - OPINION AND ORDER

1.  Plaintiff's Standing

Here, the thrust of plaintiff's fourth claim is that the banks were unjustly enriched by making loans to debtor when it was insolvent, thereby, prolonging debtor's life through bad debt.  Consequently, similarly to claim three, plaintiff's fourth claim states a cognizable harm to debtor.  Smith, 421 F.3d at 1004.  Accordingly, plaintiff has standing to bring its fourth claim.

2.  Adequacy of Pleading

To establish unjust enrichment, a "plaintiff must offer evidence that (1) plaintiff conferred a benefit on defendant; (2) defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for defendant to retain the benefit without paying for it." Volt Svcs. Group v. Adecco Employment Svcs., 178 Or. App. 121, 133 (2001) (citing Jaqua v. Nike, Inc., 125 Or. App. 294, 298 (1993)).  The remedy for unjust enrichment is restitution and "applies to any situation in which one person is accountable to another on the ground that otherwise one would unjustly benefit of the other would unjustly suffer loss." Jantzen Beach Associates, LLC v. Jantzen Dynamic Corp., 200 Or. App. 457, 466 (2006) (quoting Fleming v. Wineberg, 253 Or. 472, 482 (1969)).

///

32 – OPINION AND ORDER

Here, plaintiff's fourth claim merely "re-alleges its prior allegations" as factual support for its argument that the banks were unjustly enriched as a result of the allegedly fraudulent transfers. Pl.'s Am. Compl. ¶¶ 56-57. However, as previously stated in claims one and two, plaintiff failed to plead adequate facts relating to the allegedly fraudulent transfers to enable the defendants to defend against the charge and not just deny that they did anything wrong. Segmend, 780 F.2d at 731. Consequently, plaintiff's fourth claim suffers from the same lack of clarity as its first and second claims and is, therefore, dismissed for failure to comply with the heightened pleading standards of Rule 9(b). However, because plaintiff's fourth claim could possibly be cured by additional factual allegations, plaintiff is granted leave to amend its fourth claim. Doe, 58 F.3d at 497.

E. Plaintiff's Fifth Claim

Plaintiff's fifth claim seeks equitable subordination against all bank defendants pursuant to Bankruptcy Code sections 501(c)(1) and 105(a). Pl.'s Am. Compl. 18. Specifically, plaintiff argues that the banks engaged in "inequitable conduct . . . which has resulted in injury to the creditors of the bankruptcy estate and has conferred an unfair advantage on these defendants." Id. at ¶ 59. Plaintiff argues that based on this

33 - OPINION AND ORDER

inequitable conduct, "creditors of debtor – including its investors – have been misled as to the true financial condition of debtor, investors have been induced to invest without knowledge of the actual facts regarding debtor's financial condition, and/or investors and creditors are less likely to recover the full amounts due to them." Id. at ¶ 60. Consequently, plaintiff argues that because investors and creditors are less likely to recover the full amounts due to them because of the banks conduct, "the Court should exercise its full equitable powers" to subordinate any claims asserted by the banks. Id. at ¶ 61.

Defendants argue that plaintiff's fifth claim for should be dismissed, or in the alternative, made more definite and certain because: (1) plaintiff lacks standing; (2) plaintiff failed to segregate claims and allegations between defendants as Rule 10(b) requires; (3) plaintiff failed to allege sufficient facts to state a claim for relief; and (4) plaintiff failed to plead the asserted claim with the particularity required by Rule 9(b). Summit's Mot. to Dismiss 6-7, 11-15; Umpqua's Mot. to Dismiss 12-15; PCD's Mot. to Dismiss 3.

1. Plaintiff's Standing

Here, plaintiff's fifth claim alleges harm to, and seeks relief for, only debtor's creditors and investors.

34 – OPINION AND ORDER

Consequently, because a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors and may only assert claims held by the bankrupt corporation itself, and because here, plaintiff is seeking only to redress injuries to the creditors and investors caused by the defendants' alleged conduct, I find that plaintiff does not have standing to bring its fifth claim (See Smith, 421 F.3d at 1002 "It is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estates creditors, but may only assert claims held by the bankrupt corporation itself."). As such, plaintiff's fifth claim is dismissed.

F.  Plaintiff's Sixth and Seventh Claims

Plaintiff's sixth claim seeks to have an authorization pursuant to Bankruptcy Code section 549 against defendant Century Bank, and its successor in interest, PCB, voided. Pl.'s Am. Compl. 20. Specifically, plaintiff argues that "the Court's order allowing the return of the $300,000 advanced by Century Bank was based on materially false information submitted to the court" and, therefore, "the transfer was not properly authorized and should be voided, and Century Bank should be required to disgorge such funds." Id. at ¶ 66.

///

Plaintiff's seventh claim for relief is a common law claim for misrepresentation, asserting that Century Bank made misrepresentations to the court in obtaining the court order for the return of the $300,000 from the bankruptcy estate as alleged in its sixth claim for relief. Pl.'s Am. Compl. 21.

Defendant PCD makes no specific motions to dismiss plaintiff's sixth and seventh claims. Rather, PCD moves generally to dismiss, or in the alternative to make more definite and certain, all claims brought against it. PCD's Mot. to Dismiss or Make More Def. and Certain 5; PCD's Mem. In Supp. of Mot. to Dismiss or Make More Def. and Certain 2.

Here, plaintiff includes an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations. As such, this Court finds that plaintiff's sixth and seventh claims comport with the heightened pleading standard of Rule 9(b). Swartz, 476 F.3d at 764. Accordingly, PCD's general motion to dismiss or make more definite and certain is denied.

G. Plaintiff's Eighth Claim

Plaintiff's eighth claim is brought pursuant to Bankruptcy Code section 544 against PCB to avoid and recover proceeds, plus pre-judgment interest, from a sale of PCB stock. Pl.'s Am. Compl. ¶¶ 71-75. Plaintiff argues that one of the lines of

36 - OPINION AND ORDER

credit held by PCB, as successor in interest to Century Bank, was "purportedly secured by [PCB] stock held by HFLP," and that when PCB sold the stock on July 31, 2013, plaintiff was pursuing recovery of, and held an equitable interest in, the stock. Id. at ¶¶ 72-74. Consequently, plaintiff argues that PCD's security interest "is subject to avoidance under § 544 of the Bankruptcy Code on account of [plaintiff's] interest therein." Id.

Defendant argues that plaintiff's eighth claim should be dismissed, or in the alternative, made more definite and certain: (1) because plaintiff failed to allege sufficient facts to state a claim for relief; (2) to the extent plaintiff seeks to avoid any transfers made prior to August 28, 2010 because such claims are not timely filed within the time frame prescribed by UFTA; (3) to the extent plaintiff seeks to avoid any transfer made in respect of any perfected security interest or other valid lien because such transfers are not subject to avoidance under UFTA; (4) to the extent plaintiff seeks to avoid any transfer other than a transfer of property of debtor because such transfers are not subject to avoidance under UFTA; and (5) because plaintiff failed to plead the asserted claim with the particularity required by Rule 9(b). PCD's Mot. to Dismiss 3.

Bankruptcy code section 544(a) states that: a "trustee . . . may avoid any transfer of property of the debtor or any

37 — OPINION AND ORDER

obligation incurred by the debtor that is voidable by a creditor that extends credit to the debtor . . ." 11 U.S.C. 544(a). Also, as stated above in claim one, Section 544(b) enables a bankruptcy trustee to avoid any transfer of property that an unsecured creditor with an allowable claim could have avoided under applicable state law.

Here, plaintiff's eighth claim fails to specify which section of Bankruptcy Code section 544 enables it to avoid the alleged stock sale. This distinction is material because if plaintiff relies on section 544(b), as it did in claim one above, plaintiff must also specify which applicable state law enables it to void the sale of stockand plaintiff has failed to do so. Further, if plaintiff relies on section 544(a), it can only avoid obligations incurred by debtor that are voidable by a creditor that extended credit to debtor. Here, however, plaintiff alleges that the security interest in the stock it seeks to avoid the transfer of, was held and pledged by HFLP, rather than debtor. Thus, it is unclear how section 544(a) would enable plaintiff to avoid an asset that a third party, and not debtor, held and pledged to PCB.

Finally, plaintiff cites no applicable law that would enable it to recover the proceeds from the alleged stock sale even if it was avoided. Section 544 only enables a trustee to

38 – OPINION AND ORDER

avoid transfers, but is silent with regard to recovery of voided transfers.   Other sections of the Bankruptcy Code, such as section 550, address recovery of avoided transfers.   However, plaintiff has failed to allege such as statute in its eighth claim.   Consequently, plaintiff's eighth claim fails to state a claim for relief that is plausible on its face.   <u>Twombly</u>, 550 U.S. at 570.   As such, plaintiff's eighth claim is dismissed. However, pursuant to Rule 12(e), plaintiff is granted leave to amend its eighth claim.   <u>Doe</u>, 58 F.3d at 497.

II.   <u>Claims against J & R</u>

Plaintiff brings three claims against J & R for professional negligence, aiding and abetting the banks fraudulent transfers, and aiding and abetting the Holcombs' alleged breaches of fiduciary duties.   Pl.'s Am. Compl. 22-31.

A.   <u>Plaintiff's Ninth Claim</u>

Plaintiff's ninth claim is for professional negligence against J & R.   Pl.'s Am. Compl. 22.   Plaintiff argues that J & R had a duty to use the degree of care, skill, and diligence ordinarily used by accountants practicing in the same or similar circumstances, that J & R was negligent in discharging these duties, and that J & R's negligence caused debtor to incur indebtedness to new investors that it had no ability to repay." <u>Id</u>. at ¶¶ 78-79, 81.   Plaintiff also alleges that J & R "knew,

39 - OPINION AND ORDER

or as a result of reasonable inquiry consistent with the standard of care, should have known that debtor's business activities amounted to a Ponzi scheme." Id. at ¶ 80.

J & R argues that plaintiff's ninth claim should be dismissed because plaintiff stands in the shoes of the debtor who perpetrated a Ponzi scheme and, consequently, all of its claims against J & R are barred by the doctrine of *in pari delicto*. J & R's Mot. to Dismiss 3. J & R concedes that the Ninth Circuit "has not had occasion to directly address the issue . . . [of whether] *in pari delicto* can be asserted against a trustee bringing a claim on behalf of a debtor in bankruptcy," but argues that the Court should, nevertheless, use the doctrine to dismiss all claims against it here. Id. at 8. Finally, J & R argues that *in pari delicto* is "the legal equivalent of the equitable doctrine of unclean hands," which in Oregon, "may be applied at the discretion of the trial court [and] there is no reason to withhold its application here." Id. at 9-10 (citing McKinley v. Weidner, 73 Or. App. 396, 400 (1985)).

Here, the Court can find no binding authority to support the application of *in pari delicto* against a trustee bringing a claim on behalf of a debtor in bankruptcy. Moreover, as stated above, J & R concedes this. Consequently, the Court declines to apply the doctrine to this case and also declines to use its

40 - OPINION AND ORDER

discretion to apply the equitable doctrine of unclean hands at this early stage of the proceedings. Accordingly, plaintiff's motion to dismiss plaintiff's ninth claim is denied.

B. Plaintiff's Tenth Claim

Plaintiff's tenth claim is for aiding and abetting fraudulent conveyances against J & R. Pl.'s Am. Compl. 27. Specifically, plaintiff argues that J & R "provided substantial assistance to the bank defendants and the Holcombs" by providing them with accounting reviews, compilations, and other services that "acted as cover" for the Holcombs to continue the Ponzi scheme and for the banks to continue providing financing for said scheme. Id. at ¶ 85.

Moreover, plaintiff argues that Oregon Revised Statute 95.280 allows for damages for claims asserted within one year after discovery and, therefore, because "J & R aided and abetted, acted in concert with, and/or conspired with the Holcombs and the bank defendants to provide substantial assistance to bank defendants to complete the fraudulent transfers" J & R is jointly and severally liable for the transfers to the banks from August 31, 2002 until August 31, 2012. Id. at ¶¶ 86-89.

J & R argues that plaintiff's tenth claim should be dismissed because: (1) it is time barred; and (2) aiding and

41 - OPINION AND ORDER

abetting a fraudulent transfer is a cause of action that is unrecognized under federal and state law. J & R's Mot. to Dismiss 3.

### 1. Timeliness of Claim

As stated above, a fraudulent transfer claim brought under Oregon Revised Statute 95.280 is extinguished unless the action is brought "(1) under ORS 95.230(1)(a) within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant" or "(3) Under ORS 95.240(2), within one year after the transfer was made or the obligation was incurred." Or. Rev. Stat. 95.280

Here, plaintiff's tenth claim alleges that Oregon Revised Statute 95.280 allows for damages for claims asserted within one year after discovery. However, plaintiff brought the immediate action nearly two years after the discovery date. Accordingly, plaintiff's tenth complaint is not timely brought and is, therefore, dismissed with prejudice. Kendall, 518 F.3d at 1051.

### C. Plaintiff's Eleventh Claim

Plaintiff's eleventh claim is for aiding and abetting breaches of fiduciary duty against J & R. Pl.'s Am. Compl. 28. Specifically, plaintiff argues that the Holcombs breached their fiduciary duty to debtor by "engineering and operating" the

42 - OPINION AND ORDER

alleged Ponzi scheme. Id. at ¶ 91. Moreover, plaintiff argues
that "J & R provided substantial assistance to the banks and the
Holcombs by providing them with accounting reviews and
compilations that acted as cover for the Holcombs to continue
the Ponzi scheme and for the banks to continue to provide
financing for said scheme." Id. at ¶ 92. Finally, plaintiff
argues that J & R "aided and abetted, acted in concert with,
and/or conspired with the Holcombs and bank defendants to
provide substantial assistance to the bank defendants and the
Holcombs, which caused debtor to incur indebtedness to new
investors that it had no ability to pay." Id. at ¶ 93.

Here, as stated in claim three, plaintiff fails to indicate
which fiduciary duties the banks and the Holcombs breached, as
well as which statutes, rules, and regulations the banks failed
to comply with. Consequently, because plaintiff failed to
indicate which regulatory duties, statutes, rules, and
regulations were breached by the banks and the Holcombs, the
Court cannot determine whether J & R provided substantial
assistance to the banks and the Holcombs in breaching those
unspecified duties. Accordingly, plaintiff's eleventh claim is
dismissed for failure to state a claim. However, pursuant to
Rule 12(e), plaintiff is granted leave to amend its eleventh
claim. Doe, 58 F.3d at 497; Kendall, 518 F.3d at 1051.

43 - OPINION AND ORDER

CONCLUSION

Defendants' motions to dismiss plaintiff's claims are denied in part and granted in part. Specifically, as set forth above, PCC and UHC's blanket motions to dismiss all claims against them are granted, as are defendants' motions to dismiss claims one through five, eight, ten, and eleven. Moreover, plaintiff is granted leave to amend all dismissed claims, except for claim ten, which is dismissed with prejudice. Finally, defendants' motions to dismiss claims six, seven, and nine are denied.

The parties shall coordinate with the Courtroom Deputy to set up a status conference before Judge Aiken.

IT IS SO ORDERED.

DATED this 4th day of September 2015.

Ann Aiken
United States District Judge

44 — OPINION AND ORDER